HART v. DELAWARE, L. & W. RY. CO.

(Supreme Court, General Term, First Department. January 13, 1893.)

1. NEGLIGENCE—SUFFICIENCY OF EVIDENCE.
    In an action for personal injuries, it appeared that the float on which plaintiff was employed as a floatman was carried by a tug, on a dark and foggy night, to defendant's slip, without notice to defendant; that, when plaintiff's float arrived at the slip, another float was found attached to it; that the tug

thereupon pulled out this other float; that as this float was pulled out, certain latches on the bridge at the end of the slip, that entered boxes in floats, to steady them, were left protruding,—it being unnecessary to pull them in to release a float; that before defendant had time to draw in these latches, and announce the slip ready for occupancy, the tug pushed plaintiff's float into the slip; and that plaintiff, who knew of the existence of these latches, and that they had not been pulled in, had his foot jammed between one of them and a rail on the float, as it approached the bridge. *Held*, that no negligence was shown on the part of defendant. Per Van Brunt, P. J. O'Brien, J., dissenting.

**2. SAME—INSTRUCTIONS.**

In such case it was error for the court to refuse the instruction requested by defendant, that "the lack of the power to see, owing to the darkness, as the plaintiff alleges, must be taken into account by the jury and the conduct of the plaintiff, so hindered and embarrassed by the fact, must be considered, and he must satisfy the jury that his action, in the peculiar situation in which he found himself, was such as a reasonable, prudent man, under like circumstances, would have observed."

**3. SAME.**

In such case it was error for the court to refuse the instruction requested by defendant, that "if, as the plaintiff claims, it was dark, so that he was unable to observe or discover the projecting latches, and the danger to which he was exposed from them, it was his duty to be more vigilant and careful, and to exercise a higher degree of care to avoid injury or exposure, than if it had been daylight, or if, by the use of his sense of sight, he could have discovered the condition of the latches, and his liability to injury therefrom."

**4. SAME.**

In an action for personal injuries, a charge by the court that it was incumbent on plaintiff to satisfy the jury, by a reasonable preponderance of proof, that defendant was negligent, and that he himself was free from any negligence which contributed to the injury, without explaining to the jury what constituted contributory negligence, or what degree of care the plaintiff was bound to exercise, in the situation in which he was placed, is error, as being too general.

Appeal from trial term, New York county.

Action by Charles E. Hart, by his guardian ad litem, against the Delaware, Lackawanna & Western Railway Company, for personal injuries. From a judgment for plaintiff entered on a verdict of a jury, and from an order denying its motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

Hamilton Odell, for appellant.
John H. Kitchen, for respondent.

VAN BRUNT, P. J. On the 15th of May, 1890, the plaintiff was employed on a float belonging to the New York, New Haven & Hartford Railway Company used in the transfer of cars from point to point in and about the harbor of New York. In the evening of that day, between 8 and 9, the float was taken by a tug to one of the defendant's slips in Hoboken to receive some freight cars. This float was about 225 feet long and 30 feet wide. The slip was about 42 feet wide, and on either side was a rack. At the inner edge of the slip was a bridge about 40 feet 6 inches wide, with two railroad tracks upon it. This bridge was constructed like a ferry bridge,—the river end rising and falling with the tide. At this end were four heavy iron keys which were used for the purpose of

making floats fast, so that cars could be run on the floats. There were toggle boxes on the floats for these keys to enter into, to make a straight line of the tracks. When a float comes up to the bridge these keys are handled by a ratchet bar, because they are so heavy that they have to be used by a bar, and cannot be shoved in by hand. They weigh eight or nine hundred pounds, and may be projected over the edge of the bridge, and it takes eight or ten minutes to draw the keys back. The night in question was very foggy,—so dark, as the plaintiff says, "that you couldn't see over 30 feet straight ahead." When the tug with the New Haven float arrived at the defendant's slip, there was a Starin float in the slip, fastened to the bridge by ropes or hawsers. The tug whistled as it approached the bridge, and the defendant's bridge man called out that, if they wanted to get into the slip, they would have to pull the Starin float out. No notice had been given of the coming of the New Haven float. Thereupon the tug made fast to the float, and took it out of the slip, the bridge man having first loosened and detached the ropes. It was not necessary to draw back the keys to release the float. The Starin float having been detached from the bridge, the bridge man took one end of the hawser, the other end being made fast to the float, climbed up on the south rack, walked along the rack as the float made off, and, with the assistance of a man put on the float by the captain of the tug, secured the float at the mouth of the slip. This was necessary to be done, or the float which was pulled out would float away with the tide. Before the bridge man had time to do this work, and return to his position upon the bridge, and before any notice was given that the slip was ready for occupancy, the New Haven float was shoved into the slip. The plaintiff was standing by the bow of the float, ready to take the bridge line. Two lamps were burning,—one inside and one outside of a little house on the float, about five or six feet from the bow,—which cast their light ahead over the bow. When the float touched the bridge the defendant's night car inspector was standing on the bridge, with a torch in his hand, which made considerable blaze. The plaintiff took no means whatever to see if there was any danger in approaching the bridge. Shortly after the float struck the bridge it slued an inch or two, and jammed the plaintiff's foot between the key and the rail on the starboard side. There was some evidence tending to show that the plaintiff slipped, and got in this position, but this was contradicted by the plaintiff. Upon this evidence the jury rendered a verdict in favor of the plaintiff for $15,000; and from the judgment thereon entered, and from an order denying a motion for a new trial, this appeal is taken.

Upon the facts developed in this case, it may be somewhat difficult to see precisely where any negligence on defendant's part has been established. The persons managing the tug and the New Haven float must have known that these keys could not have been drawn back, because they were familiar with the locality, and knew that it took considerable time to draw them in, and that the bridge man, whose duty it was to do this, was engaged in fastening the Starin float, which was taken out of the slip for their accommodation. Without waiting for the preparation of the bridge to receive their float, it was shoved in, for

the purpose of being made fast, and the accident happened. There was no negligence upon the part of the defendants, or of their employe, in attempting to secure the float which had been taken out of the slip to accommodate the float upon which the plaintiff was. It was conceded by the plaintiff that, for the purposes of the withdrawal of the float, the taking in of the keys was not at all necessary, and they knew that the keys had not been taken in, because of the rapidity with which the Starin float was removed. Now, under these circumstances, can it be held to be negligence upon the part of this employe not to have done two important things at the same time? It appears from the evidence that this New Haven float was not expected. It came there without warning, in this irregular manner, and entered the slip, manifestly hurriedly, in order to serve its own purposes.

But, furthermore, there seems to have been error committed in the refusal of the court to charge as requested by the defendants. The court was requested to charge the jury that "the lack of the power to see, owing to the darkness, as the plaintiff alleges, must be taken into account by the jury, and the conduct of the plaintiff, so hindered and embarrassed by the fact, must be considered; and he must satisfy the jury, by proof, that his action, in the peculiar situation in which he found himself, was such as a reasonably prudent man, under like circumstances, would have observed." And also that "if, as the plaintiff claims, it was dark, so that he was unable to observe or discover the projecting latches, and the dangers to which he was exposed from them, it was his duty to be more vigilant and careful, and to exercise a higher degree of care to avoid injury or exposure, than if it had been daylight, or if, by the use of his sense of sight, he could have discovered the condition of the latches, and his liability to injury therefrom." These requests the court refused, other than he had charged. We have searched the charge in vain to find any explanation to the jury as to what constituted negligence upon the part of the defendant, or contributory negligence upon the part of the plaintiff, or as to what his duty was, in the circumstances under which he was placed. The charge of the court was simply of abstract propositions,—that it was incumbent upon the plaintiff to satisfy the jury, by a reasonable preponderance of proof, that the railroad company was negligent, and also that he himself was free from any negligence which contributed to this most unfortunate and serious injury. And after reviewing, in a general way, the facts, the court say, "The defendant corporation takes the further position, involving the second legal proposition to which the court directed your attention, that the plaintiff himself was guilty of negligence which contributed to the injury;" and he directed the jury that if it appeared to them, from the testimony, that he was guilty of negligence, he was, of course, precluded from a recovery. But he gave no instructions whatever to the jury as to what, under the circumstances, constituted contributory negligence, nor in any way intimated to them how the degree of care required of a party is affected by circumstances, or how his duty to take precautions to avoid injury is increased or lessened by the circumstances in which he is placed. It has become an axiom that what is reason-

able care must be determined in all cases by the situation and knowledge of the party, and all the attendant circumstances, and must be such as prudent persons exercise when contemplating the danger that might be encountered.  Now, in the case at bar, the plaintiff knew of the existence of these keys, and must have known that they were extending from the bridge, because the bridge man, he knew, had not time to draw them in before the float entered the slip.   In any event, he knew that they were there, and yet he took no precautions whatever to protect himself from any injury which might happen; and the jury were left as much in the dark as to what the plaintiff's duty was as the plaintiff claims to have been on the night of the unfortunate accident.   This we think was error.   The defendant had a right to have the jury instructed as to what constituted contributory negligence, and as to what care the plaintiff was bound to exercise in the situation in which he was placed, and that he could not be permitted to be stumbling along in the dark, without paying any attention to his surroundings or his personal safety, and then claim that he had used reasonable care, under the circumstances, when the injury had happened from his own neglect to look after his own safety.   The judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide the event.

O'BRIEN, J.   I concur in the result because of the errors assigned, and the reasons given in his opinion by the presiding justice relating to the refusal of the trial judge to charge certain requests made by the defendant.   I do not, however, assent to his view that the facts here presented did not tend to establish negligence on the part of the defendant.   The plaintiff's testimony presented a question which should have been submitted to the jury, because it made out a prima facie case of negligence on the part of the defendant, and freedom from contributory negligence on the part of the plaintiff.   It is true the jury, upon such evidence, might be at liberty to conclude in favor of the plaintiff or the defendant; but it is only by resolving every inference to be drawn from the facts most favorably to the defendant that it can be concluded that the burden placed on the plaintiff was not sustained.   The plaintiff had a right to assume that the defendant would properly discharge the duty of keeping the bridge and its appliances in such a condition that the float could safely approach them, even upon a dark night; and the question of whether failure and neglect to discharge this duty, by permitting the keys to project from the bridge, which would concededly be negligent unless explained, was, in the light of the circumstances presented to explain such negligence, peculiarly a question of fact.   It is true that it was competent for the defendant to show the circumstances under which its employe allowed these keys to project.   But such explanation would not, in my opinion, change the situation of still leaving the question of negligence one for the jury, upon all the testimony. Were it not, therefore, for the refusal to charge the requests to which the defendant was entitled, I should have been in favor of affirming the judgment; but for the reasons assigned I concur in the result.

BARRETT, J.   I concur, because of the refusal to charge as requested, but I express no opinion upon the facts as to the questions of negligence and contributory negligence.